The second case this morning for the court is case number 411-0965, Vrabel-Kilby v. Nationwide Mutual Insurance. For the appellant, Thomas Ebick. Did I pronounce that correctly? Yes, your honor. For the appellee, Christopher Galanos. Aye, yes your honor. And Thomas Schmidt. Are you both going to be arguing, I presume? Yes, sir. Okay, and have you spoken to the clerk about how you're going to handle the timing? We have. Excellent. You may proceed. Good morning. May it please the court, my name is Tom Ebick from Shane Associates Law Firm. I represent the plaintiff appellant in this matter, Ellen Vrabel-Kilby. I'm here today to respectfully request that this court reverse the order of the circuit court of Sangamon County, which entered summary judgment in favor of the appellee's AAA Chicago Motor Club and Nationwide Mutual Insurance Company. The facts have been laid out in the briefs, and so I don't want to spend a lot of time belaboring them, but I will mention a few before I begin my first argument. This case stems from a motor vehicle accident that occurred on July 24, 2006 here in Springfield. My client, Ellen Vrabel-Kilby, who was insured by Nationwide Insurance, was a passenger in a motor vehicle driven by her sister-in-law, Deanna Vrabel. Deanna Vrabel had insurance, insurance on the car they were in, through AAA. The accident itself was caused by Allison Dorfler, who had a $20,000 liability limit with Viking Insurance. Following the accident, Vrabel-Kilby made a medical payments claim with AAA for payment of her medical bills. There was a $5,000 med paid provision through the AAA policy. Viking Insurance tendered the policy limits of $20,000 on July 4, 2007. On February 1, 2007, Nationwide waived its segregation rights for the $20,000 and allowed settlement. Vrabel-Kilby settled her case with Dorfler and Viking Insurance for the $20,000 and reimbursed AAA for what they paid through the medical payments coverage. It was $3,333 after a one-third reduction under the Common Fund Act. She then made a claim for underinsured motorist benefits, which Nationwide denied on June 29, 2007. Following that, a complaint for declaratory judgment was filed by the plaintiff. Subsequently, motions for summary judgment were filed, and the Circuit Court of Sangamon County Judge Patrick Kelly found in favor of the defendants. With respect to AAA, he found that AAA was not provided a statutory notice of the settlement with Dorfler and therefore Vrabel-Kilby was precluded from pursuing an underinsured claim with AAA. With respect to Nationwide, Judge Kelly found that the other insurance provision of its policy precluded underinsured motorist benefits through Nationwide because there was other insurance here, other collectible insurance, namely AAA. The Circuit Court erred in entering summary judgment for AAA after finding Vrabel-Kilby had forfeited her rights. Now, under the exclusion provision of the AAA policy, AAA will not provide UIM coverage for an insured person, when they're insured, which Vrabel-Kilby was, she was a passenger in a vehicle insured by AAA, if that person settles a personal injury claim with the at-fault party without providing the statutory notice, which is 30 days pursuant to Section 143A of the Insurance Code. Now, while Vrabel-Kilby did settle her personal injury case without providing notice to AAA, AAA is still not prevented from pursuing subrogation. In other words, she can still pursue a claim with AAA. And I think there's two cases, namely, that I focus on. One, in my original brief to this Court, that's the Richter v. Standard Mutual insurance case. And the second one is, I guess, GUESE v. Farmers International Insurance Exchange. And both of those cases discuss the Supreme Court and Illinois Supreme Court case from 1978. In Richter, the plaintiff in that case had insurance through Standard Mutual Insurance Company. He was in an accident caused by a Doe v. Val, who was insured by State Farm. The primary issue in that appeal, this Richter case, was whether the plaintiff's settlement and release with Val, the at-fault party, without Standards' knowledge and consent, barred Richter's under-insured claim with Standard. State Farm limits, I believe, were $50,000. That's the at-fault parties. The plaintiff in that case had under-insured limits for $100,000. The claims adjuster for Standard Mutual, the plaintiff's insurance company, earlier in that case, has here advised State Farm of Standard Mutual's subrogation interests and medical payments made to the plaintiff. So has here, in this case, a claim for medical payments under the MedState provision of the insurance policy of AAA was made. That was the same thing that was done in Richter v. Standard Mutual. The plaintiff in that case settled her case with the at-fault party without the consent of her insurance company, and that is why her insurance company denied her under-insured claim. But the appellate court held Standard Mutual was still required to provide UIM coverage, and it reasoned in part that her insurance company, Standard, was not prejudiced, even though the personal injury suit was settled without its consent, where State Farm, the at-fault party's insurance, had notice of its subrogation interests, and the release signed in that case was a general release without an amount covering Standard Mutual's subrogation interests. In its reasoning, the court referenced the Illinois Supreme Court's decision in Home Insurance v. Hertz, a 1978 case. In that case, the Supreme Court stated a rule, and that rule is this. An unlimited release does not bar subsequent subrogation action by an insurer against a tortfeasor if the tortfeasor or his or her carrier has knowledge of the insurer's subrogation interests prior to the release. And that's the case here. Triple A had knowledge of, or I'm sorry, Triple A had knowledge of, strike that, Viking Insurance, there's so many insurance companies here, Viking Insurance, the at-fault party's insurance, had notice of Triple A's subrogation interests, at least with respect to the medical payments. We took Peggy Sledge's deposition, she's a representative of Triple A, and she testified that Triple A would have been aware as early as August 1, 2006, that Grable Kilby had been injured in a motor vehicle accident and was asserting a medical payments coverage claim. That's within one week of the accident, by the way. Now what she also testified, and this is more important, is that Triple A would have sent a subrogation notice to Viking and Dorfler. And I just believe that that makes a world of difference under the Supreme Court's holding of this rule stated in Home Insurance v. Hertz. Was there any evidence of that? That a subrogation notice was sent? She said, she did not have her file with her at the death, but she said it would have been her practice to send a subrogation notice. I believe she testified on page 25 of her deposition that... I asked her, would it be reasonable to suspect Triple A would have sent a subrogation notice to Viking? She said, it all depends. If we weren't able to reach them by phone, we might have sent a notice to their policy holder for them to pass on to their insurance company. But she also explained earlier, I believe, that early on, Triple A would have got the Elmwood traffic crash report. And the reason they would have got that is to ascertain the name of the other insurance companies who were involved in Triple A. She acknowledged Triple A would have contacted Viking. Did your client ever file a claim with Triple A? For underinsured motorist benefits, no. Okay. Can you tell me why? Why didn't she file a claim? And further, why didn't the same letter that was sent to Nationwide go out to Triple A? It's not in the record as to why. I wasn't working there then. From my understanding, my client, as with most lay people, do not view these claims as simply asserting a claim against an insurance company and exercising their rights to do so. They view it as suing someone. She was in her sister-in-law's car. She didn't want to. From what I understand, this isn't in the record. It would make her sister-in-law mad. She didn't want to sue her sister-in-law. From what I understand, she was very insistent. She didn't want to initially go out to Triple A. All I can deal with is what's in the record. I will say that I think what is in the record under the current case law is sufficient for her to go forward with her claim. But the MedPay department of an insurance company is separate from the underinsured motorist department, isn't it? Correct. But, again, under this Richard case, that's what happened there. And the way I interpret that case and this guest case, which I'm going to talk about in a minute, simply because there is a settlement necessarily without consent will not preclude the insurance company for the insured from pursuing segregation later. Counsel, if I understand your argument, under the facts here, Triple A still has subrogation rights. That's my interpretation. Correct. That's my interpretation of the case law, as specifically Richard in this guest case, as interpreting the rule announced by the Supreme Court in Home Insurance v. Herbs. In the guest case, it's a 1992 case, where Mr. Guest or Mrs. Guest was involved in an automobile accident caused by a person with the last name of Bulver. Again, a general release was executed in that case, and in that case there were no MedPay claims made, as far as I could tell from reading it. Guest did not formally advise the farmer's insurance company, their insurance company, of the settlement. And the Supreme Court, I'm sorry, the appellate court, addressed the purpose of Section 143A.27 that puts this notice requirement in place. And what it stated was, in interpreting that, is that that section specifically applies where the insurer has been provided with written notice in advance of the settlement. By the way, that case is cited in the reply brief, not the original brief. It stated the purpose of that section is to impose, what the purpose is, is to impose an additional burden on the insurer's preservation of its subrogation rights by requiring the insurer to match any settlement offer tendered by the underinsured motorist when the insurer has been provided an advance written offer. In that case, the court held that since, the section would not apply since farmers did not formally receive notice. And then it tied it back into this rule announced by the Supreme Court back in 1978 that a general release executed by an insured, an injured party, does not extinguish the subrogation rights of the injured party's insurer where the tortfeasor or the tortfeasor insurer had knowledge of the subrogation rights of the injured party's insurer. And I just think in this case, the evidence shows that Viking, Ms. Dorfler's insurance company, had notice. And at the very minimum, there's a genuine issue of material fact as to whether it did. This court, to me nationwide, is the simpler argument that I had to make here, the argument with respect to nationwide. I mean, this court should find, I'm here today to ask this court to find, it has a matter of law. Rabel Kildee, my client, is entitled to UIM coverage under her nationwide policy and reverse the order of the circuit court. First of all, the circuit court found she did not timely advise nationwide. I have to believe that it's simply a timely. She clearly... I didn't hear what you said. The circuit court in its order, the way I read its order, found that she did not timely provide written notification nationwide. But she did. And on January 4th, 2007, that's the day that Viking Insurance tendered the policy limits of $20,000. The next day, Rabel Kildee's attorney, Mr. Timothy Shea, sent a letter to Nationwide advising them of its rights. And Nationwide, on February 1st, 2007, sent a letter, and it said, on the record, waiving segregation. So she clearly timely provided notice to them. And, in fact, they waived their segregation rights. But the circuit court erred. And the more important issue here, the primary issue here, is whether the circuit court erred in finding the other insurance provision of the Nationwide policy precludes coverage here. And it does not. What the circuit court held is that because the Nationwide policy excludes coverage where they're insured as occupying a motor vehicle other than their motor vehicle, its coverage is in excess of any other, quote, collectible, end quote. And that's what the circuit court hung its hat on and the reason that there was other collectible insurance. Well, let me just state this. Incidentally, when Nationwide initially denied this claim on June 29, 2007, they weren't denying an underinsured claim. They didn't deny that until they filed their answer to the complaint for declaratory relief. That initial denial back in June of 2007 was for medical payments coverage, which, as Justice Pope pointed out, is a separate part of an insurance policy. I have no doubt about that. In reading their denial, they referenced the medical payments made by AAA, and, in fact, the denial referenced the section of its policy, which was its medical payments coverage. But here's the thing. The circuit court's reasoning was misplaced, that Grable-Kilby should not be allowed to recover because there was other collectible insurance. First of all, when I started writing these briefs and arguing this case in the circuit court, my initial thought was, well, if she is barred, if we are barred from pursuing AAA, there is no other collectible insurance. But that argument was kind of discounting me with the circuit court's reasoning that, look, basically what Judge Kelly said is there was insurance out there, it was available, and it was collectible, but because the 30-day notice wasn't followed, it's not. But here's the thing. Under Illinois Farmers Insurance Company v. Cisco, an Illinois Supreme Court case from 1978 that I referenced in my original brief filed in this court, that reasoning has been rejected by the Supreme Court. And in that case, the Illinois Supreme Court addressed the propriety of another insurance provision in conjunction with Section 143A of the Insurance Code. Initially, the court held, or not held, but noted, has as well settled an insurance provision which conflicts with the statute as void. It then addressed the other insurance provision in that case, which provided uninsured motorist coverage will not be available for a vehicle other than you're insured unless the owner of that vehicle has no other insurance applicable to this part. And by the way, the insurance policy here, the Nationwide, it defined an uninsured vehicle as one which is underinsured. But the Supreme Court reasoned that that other insurance provision, with that other insurance provision, Illinois Farmers Insurance Company was trying to condition, or was attempting to condition, the uninsured motorist coverage of its policy on the availability of similar coverage, rather than on the uninsured status of the person causing the injury. The court went on to state that because the focus of the statute, Section 143A, is on requiring coverage of an uninsured, of a person, it believed that a provision conditioning the uninsured motorist coverage on the availability of another party's uninsured motorist coverage is contrary to the statute and therefore void. So my point is... But Mr. E., wasn't the crux of the Cisco case that the insured paid for $100,000 worth of insurance, but because of that provision they were actually limited to only collecting $20,000, which we don't have that here. Wasn't that really the impetus of the Cisco holding? Correct. Well, that's how I interpreted the facts. But the reason I cited it was because of the statements in there where the court... My interpretation of that case is the court saying, look, you can't condition coverage on the availability of other insurance companies. The focus here has to be on the uninsured purpose. And if we look at the purposes of uninsured coverage, it's too cold, after all. But it's to see that the insured will not be deprived of the uninsured motorist coverage and that he or she will receive uninsured motorist coverage up to the limits for which he or she paid. Okay, well, let me ask you then. As you say, twofold, the insured will not be deprived of uninsured or underinsured motorist protection. Well, we have that here, don't we? There's $100,000 of protection here, right? Through Nationwide, yes. Right. Right. And with the circuit court's ruling, she's deprived of that. She cannot pursue a claim with Nationwide anymore. But only because she didn't do what she was required to do under the AAA policy. Correct. Pursuant to the circuit court's ruling. And then the second point is the insured will receive uninsured motorist coverage up to the limits for which he paid. And we have that here, right? They paid for $100,000 and the clause in question ensures that they'll get $100,000. Now, maybe not from Nationwide, but if not, from Nationwide, from somebody else. Correct. If the AAA, if we succeed on the AAA argument, yes. But my argument here is more on the alternative, that if the court finds that AAA is not under an obligation to provide insurance coverage. So, yes, Your Honor. Okay. Well, you'll have some further time on rebuttals. Thank you. So we'll hear from the appellees now. May it please the Court. My name is Thomas Schmidt. I represent AAA Chicago. One key that was raised by Justice Polk, I think, is relevant to our discussion concerning whether AAA knew or should have known of this lawsuit and settlement against the at-fault party, Ms. Durfler. And that is whether AAA ever sent a subrogation notice to the at-fault party's insurer, Century Insurance Company. The record reflects, and unfortunately I don't have the page, that there was a letter sent by AAA Chicago to Nationwide Insurance in the fall of 2006 saying that we, AAA, had paid $5,000 in MedPay benefits and claimed subrogation. Obviously, AAA made a mistake. They directed their letter to the wrong party. That letter should have been directed to Century. But I think the point of this error is that the insurer, Drable Kilby, is obligated to tell AAA in some form, number one, I am pursuing a UIM claim against you, AAA. And number two, I have a settlement pending with the at-fault party's insurance carrier. Drable Kilby did neither of those two things. Unlike the first case cited by Plaintiff Richter, Drable Kilby never filed a lawsuit against the at-fault party. In Richter, this was critical to the court's analysis because the court said, well, even if the settlement occurred and I believe it was Farmers in that case or the UIM carrier was not notified of the settlement, the UIM carrier could still join the lawsuit against the at-fault party. And there was time to do that. The second case, Guess, is also inapplicable because in Guess there was a settlement agreement produced and the court held that the settlement agreement did not bar Farmers Insurance Company, which I believe was the insurer in Guess, from filing a subrogation lawsuit. Here, we have a motor vehicle accident occurring 7-24-2006. The first time AAA Chicago knows of a UIM claim is when the instant lawsuit was filed with the Sangamon County Circuit Court on July 22, 2008. Now, I don't think the record contains the date of service on AAA Chicago, but I do not think anyone can claim that the filing of a lawsuit itself triggers notice to an insurance carrier of a UIM claim. The two-year statute of limitations was gone by the time AAA Chicago knew of a UIM claim against it, much less any settlement with the at-fault party's insurance carrier. That's a key distinction between these other cases and our facts here. AAA Chicago never knew of any claim against it until this declaratory judgment lawsuit was filed. Now, what's the prejudice in many cases? First of all, I do not see that in the contract of insurance, this notion of prejudice. AAA simply said in their contract of insurance with Frabel-Kildee, we wish to be notified before you agree to settle with the at-fault party's insurance carrier. And that gives us time to see whether we want to file a lawsuit against the at-fault party or intervene in the lawsuit. Now, Counsel for the Plaintiff suggested in his brief that there is no wrong there in the failure to notify AAA Chicago because Nationwide had a crack at making a decision as to whether to sue Ms. Derfler or not. And Nationwide declined. But that is really irrelevant because AAA itself did not have the opportunity to make that decision. Their decision-making may have been very different than what Nationwide did. And I suggested a couple examples of why this might be important. Allison Derfler, the at-fault party, was 19 according to the Illinois Traffic Crash Report. She may have still had coverage with her parents. We don't know. She may have been at work at the time of this accident or somehow employed. We don't know. That would trigger additional coverage. There may not have been only a $20,000 recovery pot. So you think Nationwide may have overlooked all of that? I don't know. It's not in this record. And I don't think a court can speculate as to what one insurance company did versus what another insurance company might do. In any case, AAA never knew about a claim against the at-fault party. The case is very similar. How about his argument that you still have subrogation rights under these facts? They evaporated with the statute of limitations. So by the time we knew, it's gone. Do you have no remedy available? None. No, it's a two-year statute of limitations, and that's it. And I think the Germain case is what this court historically decided in 1989, the Standard Mutual case, which I cited in my brief, which is the reason why AAA simply suggests that the decision of Judge Kelly as to AAA be affirmed. Unless there are any questions, that's all I have. Thank you, counsel. May it please the Court, counsel. My name is Chris Galanos, and I represent Nationwide in this matter. It is Nationwide's position that there are three potential outcomes from today's hearing. First, the court could find that AAA is obligated to provide coverage. They could find that AAA is not obligated to provide coverage, and that the term collectible in the Nationwide policy is not ambiguous. And finally, they could find that AAA is not obligated to provide coverage, and that the term collectible is ambiguous. Nationwide believes that regardless of which of the three outcomes the court reaches, the trial court's grant of summary judgment in their favor should be upheld. I just want to touch briefly on the Cisco case and the Sin case cited by the plaintiff in their briefs. Those cases are readily distinguishable on a number of bases. First, neither one of those cases dealt with excess insurance. The policy is in question, had prorata clauses. It did not deal with excess clauses. And secondly, as the court has already pointed out, those cases, if the exclusions were enforced, would have resulted in insurers receiving less benefits than they previously would. Can I ask you a question about the prorata clause? I just want to be able to understand this for myself. Let's say her damages were $200,000, AAA's coverage was $250,000, and Nationwide's was $100,000. She got $20,000 from Century, right? Correct. So let's say she's now down to $180,000, and it's all within the coverage of AAA. Is Nationwide going to contribute 40% of that? In this case, with this excess clause? Yeah. No. They wouldn't have to. They would contribute nothing if it was within AAA's limits. Absolutely. They would contribute nothing unless somehow... It exceeded the $250,000. Right. Which mathematically, of course, is impossible. But then, yeah, I was going to say, isn't there a policy provision that says you can't collect more than the largest amount of coverage? I thought in Nationwide's there was a provision that said that. So that would be up to $250,000, I would think. Nationwide's other insurance provision clause contains four paragraphs. The first paragraph deals with situations where an insurer is injured in a vehicle other than their own car, which is the case we have here. In those situations, their coverage is strictly excess coverage. They will only pay some amount over what other uninsured, underinsured coverage is available. In this case, the primary coverage would be AAA, which is $250,000. Because the limits of the Nationwide policy can never exceed that, under these circumstances, they would never have to pay coverage. The total limits that you were discussing, I believe, are in paragraph four of that. And those deal with situations where an insured is injured in a vehicle other than her own auto, in her own vehicle. Then, if there are multiple policies that apply, Nationwide would pay as pro-rata share. So if she was injured in her own vehicle, you say then they would pay the pro-rata share? Exactly. But because, in this case, the coverage is excess, and the McAmeel case cited by both parties in the brief, sets out the steps that a court must consider in determining whether an other insurance provision complies with public policy. And as long as the insured receives benefits up to the amount for which they pay premiums, the clause does, in fact, comply with public policy. And as we've discussed here, if AAA is obligated to provide coverage, the plaintiff will receive the benefits, and up to an amount at least, what she paid premiums for. In this case, it would actually be more. So I think the only real issue in this case is what happens if the court finds that AAA does not have to provide coverage. In that case, we again look to the other insurance provision. In this case, Paragraph 1 again states that the Nationwide coverage is excess over any other collectible insurance. Now, the parties spent a lot of time in their briefs discussing what the courts should do if it finds that the term collectible is ambiguous. And I think that's important. But I think the first step is to decide whether or not it's ambiguous at all. Black's Law Dictionary defines collectible as debts, obligations, demands, liabilities that one may be made to pay by means of legal process. Now, no one today has argued that AAA coverage would not have been collectible on the date of the accident. Nationwide contends that is the period of time the court should look at. This view is supported by case law from other jurisdictions, specifically the Supreme Court of North Carolina in Anderson v. Allstate, that's 266 North Carolina 309. The Appellate Court of Florida, that's 167 Southern 2nd 586 in the Freefeld v. Royal Indemnity Company case. And the Supreme Court of Tennessee in Harcarby v. Phoenix Insurance Company, that's 417 Southwest 2nd 327. In all of those cases, the court considered the terms valid and collectible in an insurance policy. And the courts found that in those cases, the term valid and collectible meant, are the proceeds valid and collectible at the time of the incident given rise to the claim? On July 24, 2006, the Bipin policy was in effect, the AAA policy was in effect, the nationwide policies were all in effect. And again, no one has argued that Brable-Tilby could not have collected under the AAA policy on that date. Accordingly, by definition, they were collectible. And they remained collectible for over six months until Brable-Tilby waived her rights to those AAA proceeds by settling her case with Viking without consent. I have not found an Illinois case directly on point, but the First District in Northbrook Property Casualty Insurance v. U.S. Fidelity and Guarantor Company, that's 150 LF 3rd 479, cited both the Friedfeld case and the Harcarby cases with approval when it stated that the proper time for determining whether a policy was valid and collectible with regard to an insurer's duty to defend was the time of the accident itself. In short, under the date of the accident analysis, the AAA policy was collectible insurance as a matter of law and there's no ambiguity with which the Court must concern itself. The fact that that coverage is no longer available is not something that affects nationwide coverage. Or as the Anderson Court put it, the plaintiff's own destruction of her claim against a primary carrier by the release of a negligent driver cannot enlarge her rights against the excess carrier. In this case, that's nationwide. Now, if the Court does find that there's some ambiguity with regard to the term collectible, nationwide coverage still remains, as a matter of law, not implicated. Now, nationwide acknowledges that if the Court rules in favor of AAA, then that coverage is no longer collectible, which gives plaintiffs' claim to the rise that there's some kind of ambiguity here. But again, that ambiguity is not present if you look at this at the time of the collision. The Hoffman decision, which is cited extensively in Nationwide's brief, supports the proposition that even if the Court finds the term to be ambiguous, that doesn't mean necessarily that nationwide must provide coverage. Rather, the Court must look at the term and interpret it based on the intent of the parties, the type of the policy contracted for. And in Hoffman, the Court decided that that meant, and they were using the word available rather than collectible, which reasonably available. Hoffman has been cited with approval in other jurisdictions, including the Supreme Court of Kansas and the United States Court of Justice. Using that analysis in this case, and construing the word collectible to mean reasonably collectible, ensures that Nationwide, who contracted to provide only excess coverage, will only have to provide the coverage for which they contracted and calculated the premiums for. On the other hand, as long as plaintiff complies with the Illinois Insurance Code and the policy language, then they are entitled to receive the full extent of the coverage they contracted for. It is only when the plaintiff, as in this case, waives or fails unreasonably to effectuate a claim for primary coverage that an issue arises. On these facts, to force Nationwide to provide primary coverage when it only contracted for and collected premiums for excess coverage is inequitable, and it eviscerates the full purpose of contracting for excess insurance. That is especially the case when the reason that the primary coverage is unavailable is the plaintiff's own actions. The Court, for the reasons set forth in this argument in our brief, Nationwide respectfully requests that the Court uphold the trial court's grant of summary judgment in their favor. Thank you. Thank you. Before we go to rebuttal, Mr. Schmidt, I forgot to ask you something that I'd like a response to. How was the plaintiff supposed to know about the 30-day notice requirement inasmuch as it was not her policy? I don't have any other answer to that, because the statute is not the best way to statute. Okay, thank you. Now rebuttal. I'm going to start off with the arguments made by Nationwide, and specifically with this Hoffman case. This Hoffman case that Nationwide cites in its brief, first of all, it doesn't address the Illinois Farmers Insurance Company versus Cisco case, but it relies on Hoffman. Hoffman, as a district court decision in Connecticut in 1987, decided 10 years prior to this Illinois Farmers Insurance case, Hoffman dealt with the word availability in an insurance clause. Not collectible, but counsel conceded they're probably not synonymous. That's been rejected by our Supreme Court 10 years later in Illinois Farmers Insurance Company. Not only that, I think an important distinction needs to be made here, and I'll use Hoffman for that distinction and try to relate it to what the whole purpose of the law is in this area. In Hoffman, the injured person settled the claim with the tortfeasor for $5,000, I think $5,300, out of a $20,000 policy. It then went and settled an underinsured claim with the car that he was in for $8,300. Out of $100,000 available, Connecticut law allowed for stacking. So he settles the first claim with the tortfeasor for $5,000 out of a $20,000 claim. Then he goes on and settles for $8,300 when there's $100,000 available. And then he tried to assert an underinsured claim with his insurance company. And that's not the case here. And I think that's what's meant here by other collectible insurance or other available insurance, if anything. It means if there's insurance, for instance here, Viking had a $20,000 policy. And if Rable Kilby says, let's say Viking got stingy, which happens a lot with different insurance companies, and says, I'm only offering $15,000, I think you have issues with liability. And Rable Kilby says, you know what, I don't want to spend three years litigating this case. Just settle for $15,000. So she settles for $15,000 when there was $20,000 available. That's what's meant by other collectible or other available insurance. That's what happened. Often that would not be fair. That would not be equitable to her insurance company when there was other insurance available. But Nationwide goes on to argue that the purposes, as explained in McKimmel, and I both think, we do both at least agree, that this McIlmail case addressed other insurance clauses and whether they conform to public policy. And it's a two-part test, as Justice Turner pointed out a few minutes ago. And that's in their elements, not factors. But first, the insured will not be deprived of uninsured motorist protection, and the insured will receive underinsured motorist coverage up to the limits for which he or she pays. All I'm saying is, AAA, if this court finds and affirms that part of this court's order, agreeing to summary judgment in favor of AAA, Rable Kilby is going to be denied underinsured motorist coverage up to the limits for which she paid, which is $100,000, if AAA is off the book. She's going to be denied that. So this other insurance clause would not confirm with the purposes of the uninsured motorist statute. But the other side of that is that if she had pursued her claim against AAA, Nationwide would never have paid anything, right? It would never have been required to pay anything under her policy. That is correct. But I couldn't find a single case which held she had a duty to pursue AAA. And the other thing is, I just think this Illinois Farmers v. Cisco case addresses this, and it says the purpose has to be on the underinsured status or the status of the person that caused it, not on the availability of the other insurance, or it cannot be conditioned on the availability of other insurance. I'm sorry if I cut you off. I was just going to say, it seems to me her own contract with Nationwide required her to pursue collectible insurance, and AAA was clearly collectible, assuming her damages exceeded $20,000. Well, it was collectible in one sense, but in the other sense, it's not if she doesn't pursue. It's not collectible if she doesn't, and I see what you're saying with respect to her to follow steps, but it's not collectible if the steps weren't followed. But it was ultimately not collectible because of actions she failed to take herself. You mean the definition of whether it's collectible or not will depend upon whether she seeks to take action? Not necessarily. I just think that what I would respond is, I mean, it would be one way to define it, but I don't think she may be penalized for her failure to take action when to do so would not confirm with the policy behind the underinsured, uninsured motor statute and would seem to conflict with this Illinois Farmers v. Cisco case. Thank you. Okay. Thanks to all three of you.